1  BILAL A. ESSAYLI
   First Assistant United States Attorney
2  IAN V. YANNIELLO
   Assistant United States Attorney
3  Chief, National Security Division
   JOHN J. LULEJIAN (Cal. Bar No. 186783)
4  Assistant United States Attorney
        1200 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6       Telephone: (213) 894-0721
        Facsimile: (213) 894-0141
7       E-mail:   John.Lulejian@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA
9

FILED
CLERK, U.S. DISTRICT COURT

NOV - 6 2025

CENTRAL DISTRICT OF CALIFORNIA
BY         DEPUTY

10                 UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  IN THE MATTER OF THE              No. 2:25-MJ-06750
    EXTRADITION OF
13                                    GOVERNMENT'S REQUEST FOR DETENTION
    KATIUSKA CRUZ,                    PENDING EXTRADITION PROCEEDINGS;
14                                    [Proposed] ORDER
    A Fugitive from the
15  Government of the
    Federal Republic of Germany.
16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff, United States of America, by and through its counsel

2  of record, the United States Attorney, hereby submits its request for

3  detention pending further extradition proceedings, and a memorandum

4  of points and authorities in support of that request.

5

6  Dated: November 6, 2025         Respectfully submitted,

7                                  BILAL A. ESSAYLI
                                    First Assistant United States Attorney
8
                                    IAN V. YANNIELLO
9                                   Assistant United States Attorney
                                    Chief, National Security Division
10

11
                                    /s/ John J. Lulejian
12                                  JOHN J. LULEJIAN
                                    Assistant United States Attorney
13
                                    Attorneys for Plaintiff
14                                  UNITED STATES OF AMERICA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1                                    **TABLE OF CONTENTS**

2  DESCRIPTION                                                          PAGE

3

4  TABLE OF AUTHORITIES .................................................. ii

5  MEMORANDUM OF POINTS AND AUTHORITIES ................................ 1

6  I.    INTRODUCTION ...................................................... 1

7  II.   PROCEDURAL BACKGROUND ............................................ 3

8  III. ARGUMENT ......................................................... 4

9      A.    Applicable Law ........................................... 5

10            1.   A Strong Presumption Against Bail Governs in an
                    International Extradition Proceeding ................ 5
11
            2.   Fugitives Must Be Detained Unless They Establish
12                 "Special Circumstances" and also Demonstrate that
                 They Are Neither a Flight Risk nor a Danger to
13                 the Community ...................................... 7

14      B.    Analysis ................................................ 10

15            1.   CRUZ Cannot Meet Her Burden and Prove that She Is
                 Not a Flight Risk ................................. 10
16
            2.   CRUZ Cannot Meet Her Burden and Establish
17                 "Special Circumstances" that Justify Bail .......... 11

18  IV.   CONCLUSION ....................................................... 12

19  CERTIFICATE OF COMPLIANCE ........................................... 13

20

21

22

23

24

25

26

27

28

1                              **TABLE OF AUTHORITIES**

2   DESCRIPTION                                                        PAGE

3   CASES

4   In re Extradition of Adame,

5       No. Misc. No. H-13-287, 2013 WL 1222115

6       (S.D. Tex. Mar. 25, 2013) ................................... 11

7   In re Extradition of Antonowicz,

8       244 F. Supp. 3d 1066 (C.D. Cal. 2017) ................. 7, 9, 10

9   In re Extradition of Beresford-Redman,

10      753 F. Supp. 2d 1078 (C.D. Cal. 2010) .................... 7, 8

11  In re Extradition of Garcia,

12      615 F. Supp. 2d 162 (S.D.N.Y. 2009) ......................... 6

13  In re Extradition of Garcia,

14      761 F. Supp. 2d 468 (S.D. Tex. 2010) ....................... 11

15  In re Extradition of Hamilton-Byrne,

16      831 F. Supp. 287 (S.D.N.Y. 1992) ............................ 9

17  In re Extradition of Heilbronn,

18      773 F. Supp. 1576 (W.D. Mich. 1991) ......................... 9

19  In re Extradition of Kin-Hong,

20      913 F. Supp. 50 (D. Mass. 1996) ............................. 7

21  In re Extradition of Knotek,

22      No. 13-CV-9204-BRO-JCG, 2016 WL 4726537

23      (C.D. Cal. Sept. 8, 2016) ................................... 9

24  In re Extradition of Kyung Joon Kim,

25      No. 04-CV-3886, 2004 WL 5782517

26      (C.D. Cal. July 1, 2004) ................................ 9, 10

27  In re Extradition of Mainero,

28      950 F. Supp. 290 (S.D. Cal. 1996) ....................... 7, 8

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

In re Extradition of Martinelli Berrocal,

    263 F. Supp. 3d 1280 (S.D. Fla. 2017) .............. 6, 7, 9, 11

In re Extradition of Morrell,

    No. 3:24-MJ-05020-TLF, 2024 WL 756017

    (W.D. Wash. Feb. 23, 2024) ................................... 11

In re Extradition of Nacif-Borge,

    829 F. Supp. 1210 (D. Nev. 1993) ........................... 10

In re Extradition of Noeller,

    No. 17 CR 664, 2017 WL 6462358

    (N.D. Ill. Dec. 19, 2017) ................................ 8, 9

In re Extradition of Orozco,

    268 F. Supp. 2d 1115 (D. Ariz. 2003) ........................ 9

In re Extradition of Patel,

    08-430-MJ-HUBEL, 2008 WL 941628

    (D. Or. Apr. 4, 2008) ....................................... 7

In re Extradition of Pelletier,

    No. 09-mc-22416, 2009 WL 3837660

    (S.D. Fla. Nov. 16, 2009) ................................... 9

In re Extradition of Perez-Cueva,

    No. 16-MJ-0233, 2016 WL 884877

    (C.D. Cal. Mar. 7, 2016) ................................. 4, 8

In re Extradition of Rovelli,

    977 F. Supp. 566 (D. Conn. 1997) ........................... 9

In re Extradition of Shaw,

    No. 14-MC-81475-WM, 2015 WL 521183

    (S.D. Fla. Feb. 6, 2015) ................................... 11

iii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

In re Extradition of Sidali,

    868 F. Supp. 656 (D.N.J. 1994) ............................... 8

In re Extradition of Siegmund,

    887 F. Supp. 1383 (D. Nev. 1995) ........................ 8, 10

In re Extradition of Smyth,

    976 F.2d 1535 (9th Cir. 1992) ............................... 8

In re Mitchell,

    171 F. 289 (S.D.N.Y. 1909) .................................. 4

Jimenez v. Aristiguieta,

    314 F.2d 649 (5th Cir. 1963) ............................... 5

Kamrin v. United States,

    725 F.2d 1225 (9th Cir. 1984) ............................... 4

Salerno v. United States,

    317 (9th Cir. 1989) ............................. 5, 7, 8, 10

United States ex rel. McNamara v. Henkel,

    46 F.2d 84 (S.D.N.Y. 1912) .................................. 6

United States v. Kin-Hong,

    83 F.3d 523 (1st Cir. 1996) ................................. 8

United States v. Latulippe,

    No. 08-mj-59, 2008 WL 2704230

    (D.N.H. July 3, 2008) ...................................... 8

United States v. Leitner,

    784 F.2d 159 (2d Cir. 1986) ........................... 4, 8, 9

United States v. Snyder,

    No. 13-7082-mj, 2013 WL 1364275

    (D. Ariz. Apr. 3, 2013) .................................... 5

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

Wright v. Henkel,

    190 U.S. 40 (1903) ......................................... 5, 6


STATUTES

18 U.S.C. §§ 3141 et seq. ......................................... 3

18 U.S.C. §§ 3141(a) .............................................. 3

18 U.S.C. §§ 3142 ................................................. 3

18 U.S.C. §§ 3156 ................................................. 3

18 U.S.C. §§ 3156(a) .............................................. 3

18 U.S.C. §§ 3181 et seq. ......................................... 3


FOREIGN STATUES

German Criminal Code, Section 129 para. 1 ........................ 1

German Criminal Code, Section 129 para. 5 ........................ 1

German Criminal Code, Section 129b para. 1 ....................... 1

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

TREATIES

Treaty Between the United States of America and the Federal
      Republic of Germany Concerning Extradition, U.S.-F.R.G.,
      June 20,1978, T.I.A.S. No. 9785, as amended by the
      Supplementary Extradition Treaty with the Federal Republic
      of Germany, U.S.-F.R.G., Oct. 21, 1986, S. Treaty Doc. No.
      100-6 (1987), as amended by the Second Supplementary Treaty
      to the Treaty Between the United States of America and the
      Federal Republic of Germany Concerning Extradition, U.S.-
      F.R.G., Apr. 18, 2006, S. Treaty Doc. No. 109-14 (2006) ...... 2

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.   INTRODUCTION**

3        This is an extradition matter.  The Government of the Federal

4  Republic of Germany ("Germany") has submitted to the United States a

5  request for the provisional arrest with a view toward extradition of

6  the fugitive, KATIUSKA CRUZ ("CRUZ"), so that she may be prosecuted

7  in Germany for Formation of a Criminal Organization Abroad, in

8  violation of Section 129 paras. 1, 5 and 129b para. 1 of the German

9  Criminal Code.[1] (See Docket No. 1 at ¶ 2.)

10       Germany is prosecuting a global criminal organization, which

11 through separate but related networks, falsified subscriptions to

12 online "services" that were not provided, fraudulently charged debit

13 and credit cards for those nonexistent services through German

14 payment service providers, and distributed the wrongly charged money

15 to the participants in the global criminal organization.  (See id. at

16 ¶ 6(a).)  The networks, including the WebOps network in which CRUZ is

17 accused of participating, created shell companies that purportedly

18 operated fictitious pornographic websites and fraudulently registered

19 those companies with German payment service providers to facilitate

20 financial transactions between unsuspecting victims and the criminal

21 organization.  (See id.)  Germany's case is based in part on evidence

22 developed during the successful 2020 prosecutions of the late Hamid

23 "Ray" Akhavan ("R. Akhavan") and Ruben Weigand ("Weigand"), a current

24 co-defendant, for similar criminal conduct in the United States

25

26

27 [1] When the United States sought a warrant for CRUZ's provisional
   arrest, it did so based only on this charge, and without prejudice to
   proceeding on additional charges when Germany's formal request for
28 extradition is reviewed by the Department of State and is presented
   to the Court.

1   District Court for the Southern District of New York, 1:20-cr-00188-
2   JBR (S.D.N.Y. 2020).[2]   (See id. at ¶ 6.)

3       According to German authorities, CRUZ was the Chief Procurement
4   Officer of the WebOps network.   (See id. at ¶ 7(a).)   In this role,
5   she made the purchases necessary to maintain the WebOps network,
6   oversaw the entire procurement process, and forwarded the procured
7   documents and data to the various entities within the network.   (See
8   id.)   Her responsibilities in the WebOps network included being the
9   key coordinator for the documents backing up the fictitious
10  merchants, as well as being one of the most important interfaces with
11  intermediaries, payment service processors, and consulting firms
12  integrated into the WebOps network.   (See id.)   She also obtained the
13  know-your-customer documents for all online retailers belonging to
14  the WebOps network, including identity documents of the managing
15  directors, foundation documents, information on the registered office
16  (utility bills), company agreements, and bank statements.   (See id.)
17  In addition, CRUZ purchaseed telephone numbers that she assigned to
18  individual fictitious merchants in the WebOps network.   (See id. at
19  ¶ 7(b).)   CRUZ further purchased and changed URLs for the operation
20  of fictitious merchant websites.   (See id. at ¶ 7(c).)

21      The German investigation also revealed that CRUZ obtained the
22  documents of the front companies from different alleged consulting
23  companies, which served only as a "paper factory" for the WebOps

24

25
        [2] See https://www.justice.gov/usao-sdny/pr/two-architects-
26  fraudulent-scheme-sentenced-processing-over-150-million-through-us
    (R. Akhavan and Weigand sentenced following conviction of "scheme to
27  deceive U.S. issuing banks and credit unions into effectuating more
    than $150 million of credit and debit card purchases of marijuana by
28  disguising those transactions as purchases of other kinds of goods,
    such as face creams and dog products.")

1   network.  (See id. at ¶ 7(d).)  These Cyprus-based and UK-based
2   consulting firms prepared papers, such as registrations,
3   certificates, addresses, and ownership details, so the fictitious
4   merchants looked like legitimate businesses.  (See id.)  She then
5   forwarded these documents to Weigand and others, who entered the
6   documents into the onboarding system with the German payment service
7   processors.  (See id.)

8        As part of her responsibilities, CRUZ worked with Weigand to
9   replace the managing directors of the fictitious merchants to
10  minimize the risk of discovery and managed access to various
11  financial accounts used by the WebOps network.  (See id. at ¶ 7(e).)
12  She also worked with WebShield Limited ("WebShield"), a company that
13  had a Visa and Mastercard license and carried out risk analyses for
14  the payment service providers.  (See id. at ¶ 7(f).)  While the
15  accuracy of risk analyses was compromised when R. Akhavan acquired
16  shares in the company and commissioned its managing director to
17  manipulate the risk analyses, CRUZ nonetheless enabled WebOps to
18  onboard the fictitious merchants at the payment service provider.
19  (See id.)

20  **II.  PROCEDURAL BACKGROUND**

21       On October 29, 2025, in accordance with its treaty obligations,[3]
22  the United States filed a Complaint for Provisional Arrest with a

23

24  _____

25  [3] Treaty Between the United States of America and the Federal
    Republic of Germany Concerning Extradition, U.S.-F.R.G., June
    20,1978, T.I.A.S. No. 9785, as amended by the Supplementary
26  Extradition Treaty with the Federal Republic of Germany, U.S.-F.R.G.,
    Oct. 21, 1986, S. Treaty Doc. No. 100-6 (1987), as amended by the
27  Second Supplementary Treaty to the Treaty Between the United States
    of America and the Federal Republic of Germany Concerning
28  Extradition, U.S.-F.R.G., Apr. 18, 2006, S. Treaty Doc. No. 109-14
    (2006) (collectively "the Treaty").

1  View Toward Extradition (18 U.S.C. § 3184) in this Court.  (Docket

2  No. 1.)  That same day, the Honorable Steve Kim, United States

3  Magistrate Judge for the Central District of California, issued a

4  warrant for CRUZ's arrest.  On November 6, 2025, CRUZ, self-

5  surrendered to the United States Marshals Service in Los Angeles,

6  California.

7  **III. ARGUMENT**

8        Like the extradition process as a whole, the determination of

9  whether to release a fugitive on bail is sui generis.  The federal

10  statutes governing extradition in the United States, 18 U.S.C.

11  §§ 3181 et seq., do not provide for bail.  Further, the Bail Reform

12  Act, 18 U.S.C. §§ 3141 et seq., does not apply because an extradition

13  proceeding is not a criminal case.[4]  See Kamrin v. United States, 725

14  F.2d 1225, 1228 (9th Cir. 1984); In re Extradition of Perez-Cueva,

15  No. 16-MJ-0233, 2016 WL 884877, at *1 (C.D. Cal. Mar. 7, 2016).

16  Rather, case law provides that bail should be granted in an

17  extradition proceeding "only in the most pressing circumstances, and

18  when the requirements of justice are absolutely peremptory."  United

19  States v. Leitner, 784 F.2d 159, 160 (2d Cir. 1986) (quoting In re

20  Mitchell, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

21

22

23

24

25

_____

26     [4]     The Bail Reform Act applies only to "offenses" in violation
of United States law that are triable in the courts of the
27  United States.  See 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2).  Here,
CRUZ is not charged with an "offense" within the meaning of 18 U.S.C.
28  § 3156, but rather, with an offense committed in violation of the law
of the requesting state, Germany.

**A.   Applicable Law**

   1.   A Strong Presumption Against Bail Governs in an
        International Extradition Proceeding

Unlike in domestic criminal cases, "[t]here is a presumption against bail in an extradition case." Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989); see also United States v. Snyder, No. 13-7082-mj, 2013 WL 1364275, at *2 (D. Ariz. Apr. 3, 2013) (noting that presumption against bail in extradition is "well-established"). The Supreme Court established this presumption against bail in Wright v. Henkel, explaining that when a foreign government makes a proper request pursuant to a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the
> treaty and the law require it to do, is entitled to the
> delivery of the accused on the issue of the proper warrant,
> and the other government is under obligation to make the
> surrender; an obligation which it might be impossible to
> fulfill if release on bail were permitted.  The enforcement
> of the bond, if forfeited, would hardly meet the
> international demand; and the regaining of the custody of
> the accused obviously would be surrounded with serious
> embarrassment.

190 U.S. 40, 62 (1903); accord Jimenez v. Aristiguieta, 314 F.2d 649, 653 (5th Cir. 1963) ("No amount of money could answer the damage that would be sustained by the United States were the appellant to be released on bond, flee the jurisdiction, and be unavailable for surrender, if so determined.  The obligation of

this country under its [extradition] treaty with Venezuela is of
paramount importance."); United States ex rel. McNamara v.
Henkel, 46 F.2d 84, 84-85 (S.D.N.Y. 1912) (presentation of
forfeited bail to foreign nation "is ridiculous, if not
insulting").

    The prudential reasons for this presumption against bail in
international extradition cases are clear and compelling.  When, as
here, a requesting country meets the conditions of the applicable
extradition treaty, the United States has an "overriding interest in
complying with its treaty obligations" to deliver the fugitive.  In
re Extradition of Garcia, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009);
see also Wright, 190 U.S. at 62.  It is imperative that the United
States be regarded in the international community as a country that
honors its agreements in order to be in a position to demand that
other nations meet their reciprocal obligations to the United States.
Such reciprocity would be defeated if a fugitive flees after being
released on bond.  See In re Extradition of Martinelli Berrocal, 263
F. Supp. 3d 1280, 1306 (S.D. Fla. 2017) ("[O]ur Executive Branch has
a vested interest in enforcing our own treaty obligations for fear
that other treaty partners will refrain from doing so in the future.
And a difficult but necessary measure in carrying out that
responsibility is to secure a wanted individual and surrender him or
her to the foreign jurisdiction.").

2.    Fugitives Must Be Detained Unless They Establish
      "Special Circumstances" and also Demonstrate that They
      Are Neither a Flight Risk nor a Danger to the
      Community

In light of the strong presumption against bail established in Wright and its progeny, international fugitives may not be released on bail unless they demonstrate that (1) they are neither a flight risk nor a danger to the community, and (2) "special circumstances" warrant their release.  See, e.g., In re Extradition of Antonowicz, 244 F. Supp. 3d 1066, 1068 (C.D. Cal. 2017); In re Extradition of Mainero, 950 F. Supp. 290, 294 (S.D. Cal. 1996).  "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act."  In re Extradition of Kin-Hong, 913 F. Supp. 50, 53 (D. Mass. 1996).  Further, the burden of showing "special circumstances" rests upon the fugitive.  See, e.g., Salerno, 878 F.2d at 317-18.

In evaluating a fugitive's risk of flight in the extradition context, courts have considered, among other things, the fugitive's financial means, ties with foreign countries, and incentive to flee based on the severity of the offense.  See, e.g., Martinelli Berrocal, 263 F. Supp. 3d at 1304; In re Extradition of Beresford-Redman, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) (finding that "well-educated and sophisticated" fugitive facing serious charges in foreign country had both "incentive and ability to flee" and therefore presented flight risk); In re Extradition of Patel, 08-430-MJ-HUBEL, 2008 WL 941628, at *2 (D. Or. Apr. 4, 2008) (considering

1  fact that fugitive, a physician, had "more than sufficient assets
2  available with which to flee").

3      Crucially, the "special circumstances" inquiry is separate from
4  considerations of danger to the community or risk of flight.  See,
5  e.g., Perez-Cueva, 2016 WL 884877, at *2 (special circumstances must
6  exist in addition to absence of risk of flight).  "Even a low risk of
7  flight" is not a circumstance sufficiently "unique" to constitute a
8  special circumstance.  Leitner, 784 F.2d at 161; see also Salerno,
9  878 F.2d at 317-18 (lack of flight risk "is not a criteria for
10 release in an extradition case").  Conversely, a fugitive who poses a
11 danger to the community and/or a risk of flight should be denied
12 bail, even in the face of special circumstances.  See In re
13 Extradition of Siegmund, 887 F. Supp. 1383, 1384 (D. Nev. 1995).

14     "Special circumstances must be extraordinary and not factors
15 applicable to all defendants facing extradition."  Mainero, 950 F.
16 Supp. at 294 (citing In re Extradition of Smyth, 976 F.2d 1535, 1535-
17 36 (9th Cir. 1992)).  Courts have considered and rejected a lengthy
18 list of would-be special circumstances, including but not limited to:

19    •  The complexity of the pending litigation, see, e.g., United
20       States v. Kin-Hong, 83 F.3d 523, 525 (1st Cir. 1996);

21    •  The fugitive's need to consult with an attorney and/or
22       participate in pending litigation, see, e.g., Smyth, 976
23       F.2d at 1535-36;

24    •  The fugitive's character, background, and/or ties to the
25       community, see, e.g., In re Extradition of Noeller, No. 17
26       CR 664, 2017 WL 6462358, at *5 (N.D. Ill. Dec. 19, 2017);
27       Beresford-Redman, 753 F. Supp. 2d at 1089; In re
28       Extradition of Sidali, 868 F. Supp. 656, 658 (D.N.J. 1994);

- That the fugitive may have been living openly, see, e.g., Leitner, 784 F.2d at 160-61; In re Extradition of Pelletier, No. 09-mc-22416, 2009 WL 3837660, at *1, 3-4 (S.D. Fla. Nov. 16, 2009);

- Discomfort, special dietary needs, or medical concerns that can be attended to while incarcerated, see, e.g., Noeller, 2017 WL 6462358, at *8-9; Martinelli Berrocal, 263 F. Supp. 3d at 1301-02; United States v. Latulippe, No. 08-mj-59, 2008 WL 2704230, at *1 (D.N.H. July 3, 2008); In re Extradition of Kyung Joon Kim, No. 04-CV-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004); In re Extradition of Hamilton-Byrne, 831 F. Supp. 287, 290-91 (S.D.N.Y. 1992);

- United States citizenship or the pendency of naturalization or other immigration proceedings, see, e.g., Antonowicz, 244 F. Supp. 3d at 1072; In re Extradition of Knotek, No. 13-CV-9204-BRO-JCG, 2016 WL 4726537, at *7 (C.D. Cal. Sept. 8, 2016); In re Extradition of Orozco, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003);

- The fugitive's professional status, see, e.g., Pelletier, 2009 WL 3837660, at *3-4 (allegedly well-respected businessman); In re Extradition of Heilbronn, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991) (highly-trained doctor);

- The availability of electronic monitoring, see, e.g., In re Extradition of Rovelli, 977 F. Supp. 566, 569 (D. Conn. 1997);

- Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, see, e.g., Salerno, 878 F.2d at 318; Antonowicz, 244 F. Supp. 3d at 1070; and

- The availability of bail for the same offense in the requesting country, see, e.g., Antonowicz, 244 F. Supp. 3d at 1070; Kyung Joon Kim, 2004 WL 5782517, at *2; Siegmund, 887 F. Supp. at 1386-87; but see In re Extradition of Nacif-Borge, 829 F. Supp. 1210, 1216-17 (D. Nev. 1993).

While in certain exceptional cases some of the above may have been deemed a "special circumstance," courts generally determine "special circumstances" to exist based on a confluence of factors, as opposed to any single consideration. Such findings are highly case-specific and within the discretion of the Court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

**B.   Analysis**

The United States respectfully requests that the Court detain CRUZ without bond. CRUZ cannot meet her burden and prove that she is not a flight risk. Further, even if CRUZ could overcome this hurdle, the United States is not aware of any "special circumstances" that would justify bail in this case.

> 1.   CRUZ Cannot Meet Her Burden and Prove that She Is Not a Flight Risk

While the government recognizes that CRUZ's willingness to self-surrender into custody may diminish her risk of flight, the government maintains that CRUZ remains a flight risk for other reasons. First, given the strength of Germany's case and the United States' relatively low burden of proof in extradition

hearings, CRUZ has an incentive to avoid potential extradition to a foreign country of which she is not a citizen.  See, e.g., In re Extradition of Garcia, 761 F. Supp. 2d 468, 483 (S.D. Tex. 2010); In re Extradition of Adame, No. Misc. No. H-13-287, 2013 WL 1222115, at *3 (S.D. Tex. Mar. 25, 2013).  Moreover, the prospect of serving a lengthy sentence, which may be up to ten years if convicted of the offense sought for extradition, in a foreign country's prison further increases CRUZ's risk of flight.  See, e.g., In re Extradition of Morrell, No. 3:24-MJ-05020-TLF, 2024 WL 756017, at *3 (W.D. Wash. Feb. 23, 2024); Martinelli Berrocal, 263 F. Supp. 3d at 1305; In re Extradition of Shaw, No. 14-MC-81475-WM, 2015 WL 521183, at *9 (S.D. Fla. Feb. 6, 2015).  Additionally, based on the extraordinary amount of fraud that CRUZ is accused of helping to facilitate-estimated to be approximately € 195 million-she likely has the financial resources to flee.  Thus, no amount of bail would guarantee CRUZ's presence during her extradition proceeding.

### 2.   CRUZ Cannot Meet Her Burden and Establish "Special Circumstances" that Justify Bail

CRUZ's risk of flight is sufficient alone for the Court to deny any forthcoming application for bail.  However, even if the Court were satisfied that she is neither a flight risk nor a danger to the community, the United States is unaware of any "special circumstances" that would justify bail in this case.

Notwithstanding the foregoing, should the Court be inclined to grant bail in this case, the United States respectfully requests that the Court submit special written findings as to those specific matters that are found to constitute "special circumstances."  Moreover, to protect the ability of the United States to meet its

11

treaty obligations to the Government of Germany, the United States also respectfully requests that the Court notify the parties within a reasonable amount of time in advance of any contemplated release order.

**IV. CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court detain CRUZ pending resolution of this extradition proceeding.

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiff United States of America, certifies that this brief contains 3,895 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 6, 2025        Respectfully submitted,

                               BILAL A. ESSAYLI
                               First Assistant United States Attorney

                               IAN V. YANNIELLO
                               Assistant United States Attorney
                               Chief, National Security Division


                               /s/ John J. Lulejian
                               JOHN J. LULEJIAN
                               Assistant United States Attorney

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

13