TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
        1200 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone:  (213) 894-0721
        Facsimile:  (213) 894-0141
        E-mail:     John.Lulejian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| IN THE MATTER OF THE EXTRADITION OF<br><br>KATIUSKA CRUZ,<br><br>A Fugitive from the Government of the Federal Republic of Germany. | No. 2:25-MJ-06750<br><br>UNITED STATES' OPPOSITION TO FUGITIVE'S MOTION FOR BAIL REDETERMINATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOHN J. LULEJIAN<br><br>Date:      December 10, 2025<br>Time:      11:00 a.m.<br>Location:  Courtroom of the<br>           Hon. Steve Kim |

Plaintiff United States of America, by and through its counsel of record, the Deputy Attorney General, the First Assistant United States Attorney for the Central District of California, and Assistant United States Attorney John J. Lulejian hereby files its Opposition to Fugitive's Motion for Bail Redetermination.  This opposition is based on the attached Memorandum of Points and Authorities, the attached declaration, the United States' Request for Detention (Docket No. 9), the statements made by government counsel at the

November 12, 2025, hearing, the findings made by the Court at the November 12, 2025, hearing, and any evidence that may be presented at the December 12, 2025, hearing on this matter.

For the reasons set forth in detail below, the United States respectfully requests the Court deny KATIUSKA CRUZ's application and continue to detain her pending extradition to Germany.


Dated: December 8, 2025          Respectfully submitted,

                                 TODD BLANCHE
                                 Deputy Attorney General

                                 BILAL A. ESSAYLI
                                 First Assistant U.S. Attorney

                                 IAN V. YANNIELLO
                                 Assistant United States Attorney
                                 Chief, National Security Division


                                 */s/ John J. Lulejian*
                                 JOHN J. LULEJIAN
                                 Assistant United States Attorney

                                 Attorney for Plaintiff
                                 UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                                  <u>PAGE</u>

TABLE OF AUTHORITIES...............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.   INTRODUCTION..................................................1

II.  ARGUMENT......................................................2

  A.   CRUZ Continues to Fail to Establish "Special
       Circumstances" that Warrant Release on Bail...............2

     1.   Hardships Are Not "Special Circumstances"...........2

     2.   CRUZ's Health is Not a "Special Circumstance".......5

     3.   The Availability of Bail in Germany Is Not a
          "Special Circumstance".............................7

     4.   The Possibility of Protracted Extradition
          Proceedings is Not a "Special Circumstance".........9

     5.   CRUZ Cannot Demonstrate a Substantial Likelihood
          of Success in the Extradition Proceedings..........11

     6.   CRUZ's Alleged Community Support, Lack of
          Criminal History, Non-Violent Charge, and Lack of
          Flight Risk Are Not "Special Circumstances"........14

  B.   CRUZ Continues to Be a Flight Risk......................16

III. CONCLUSION...................................................17

**TABLE OF AUTHORITIES**

DESCRIPTION                                                    PAGE

FEDERAL CASES

Ahmad v. Wigen,
      910 F.2d 1063 (2d Cir. 1990)................................. 13

Barapind v. Enomoto,
      400 F.3d 744 (9th Cir. 2005)................................. 11

Basic v. Steck,
      819 F.3d 897 (6th Cir. 2016)................................. 12

Drumm v. McDonald,
      Civ. A. No. 15-14221-RGS, 2016 WL 111411
      (D. Mass. Jan. 11, 2016)..................................... 7

Emami v. U.S. Dist. Court for N. Dist.,
      834 F.2d 1444 (9th Cir. 1987)................................ 13

Grin v. Shine,
      187 U.S. 181 (1902).................................... 12, 14

In re Extradition of Antonowicz,
      244 F. Supp. 3d 1066 (C.D. Cal. 2017)................. 3, 7, 10

In re Assarsson,
      635 F.2d 1237 (7th Cir. 1980).......................... 12, 13

In re Extradition of Azizi,
      No. 5:14-cr-90282 PSG, 2014 WL 1995083
      (N.D. Cal. May 13, 2014)................................. 7, 15

In re Extradition of Beresford-Redman,
      753 F. Supp. 2d 1078 (C.D. Cal. 2010)................... 3, 15

In re Extradition of Budrys,
      No. 19 M 179, 2019 WL 1958566
      (N.D. Ill. May 2, 2019).................................. 4, 10

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

In re Extradition of Carr,
      No. 20 CR 370, 2020 WL 4816052
      (N.D. Ill. Aug. 18, 2020)................................... 10

In re Extradition of Drumm,
      150 F. Supp. 3d 92 (D. Mass. 2015).......................... 3

In re Extradition of Gohir,
      No. 2:14-MJ-00314-CWH, 2014 WL 2123402
      (D. Nev. May 21, 2014)...................................... 5

In re Extradition of Hamilton-Byrne,
      831 F. Supp. 287 (S.D.N.Y. 1993)............................ 6

In re Extradition of Harrison,
      No. 03 CR. MISC. 01, 2004 WL 1145831
      (S.D.N.Y. May 21, 2004)..................................... 15

In re Extradition of Heilbronn,
      773 F. Supp. 1576 (W.D. Mich. 1991)......................... 9

In re Extradition of Huerta,
      No. H-08-342M, 2008 WL 2557514
      (S.D. Tex. June 23, 2008)................................... 5

In re Extradition of Kirby,
      106 F.3d 855 (9th Cir. 1996)................................ 9

In re Extradition of Kyung Joon Kim,
      No. CV 04-3886-ABC(PLA), 2004 WL 5782517
      (C.D. Cal. July 1, 2004)................................. 5, 7

In re Extradition of Mahabir,
      858 F. Supp. 504 (D. Md. 1994).............................. 3

iii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                    PAGE

In re Extradition of Mainero,

    950 F. Supp. 290 (S.D. Cal. 1996)........................... 9

In re Extradition of Martinelli Berrocal,

    263 F. Supp. 3d 1280 (S.D. Fla. 2017)............... 7, 10, 16

In re Extradition of Morrell,

    No. 3:24-MJ-05020-TLF, 2024 WL 756017

    (W.D. Wash. Feb. 23, 2024)................................. 16

In re Extradition of Nacif-Borge,

    829 F. Supp. 1210 (D. Nev. 1993)........................ 5, 15

In re Extradition of Rouvier,

    839 F. Supp. 537 (N.D. Ill. 1993).......................... 5

In re Extradition of Sacirbegovic,

    280 F. Supp. 2d 81 (S.D.N.Y. 2003)......................... 7

In re Extradition of Schumann,

    No. 18 CR 283, 2018 WL 4777562

    (N.D. Ill. Oct. 3, 2018)................................... 3

In re Extradition of Shaw,

    No. 14-MC-81475-WM, 2015 WL 521183

    (S.D. Fla. Feb. 6, 2015).................................. 16

In re Extradition of Siegmund,

    887 F. Supp. 1383 (D. Nev. 1995)........................ 7, 8

In re Extradition of Smyth,

    976 F.2d 1535 (9th Cir. 1992)........................ 3, 9, 10

In re Extradition of Tehrani,

    No. SA 16-MJ-250-RAO, 2016 WL 3456971

    (C.D. Cal. June 17, 2016)................................. 10

iv

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                      PAGE

Koskotas v. Roche,
    931 F.2d 169 (1st Cir. 1991)................................ 13

Martinez v. United States,
    828 F.3d 451 (6th Cir. 2016) (en banc)..................... 12

Noeller v. Wojdylo,
    922 F.3d 797 (7th Cir. 2019).............................. 14

Rana v. Jenkins,
    113 F.4th 1058 (9th Cir. 2024)............................ 10

Sainez v. Venables,
    588 F.3d 713 (9th Cir. 2009).......................... 12, 13

Salerno v. United States,
    878 F.2d 317 (9th Cir. 1989)...................... 9, 11, 12

Skaftouros v. United States,
    667 F.3d 144 (2d Cir. 2011)............................... 12

Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court,
    482 U.S. 522 (1987)....................................... 12

United States v. Kin-Hong,
    83 F.3d 523 (1st Cir. 1996)............................ 9, 10

United States v. Nolan,
    No. 08-M-97, 2009 WL 4544699
    (N.D. Ill. Dec. 1, 2009)................................... 5

United States v. Taitz,
    130 F.R.D. 442 (S.D. Cal. 1990)........................... 6

United States ex rel. McNamara v. Henkel,
    46 F.2d 84 (S.D.N.Y. 1912)................................ 9

**TABLE OF AUTHORITIES  (CONTINUED)**

DESCRIPTION                                                                    PAGE

U.S. STATUTES

18 U.S.C. § 3184................................................... 13

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3      As detailed in the United States' previous filings (see Docket

4  Nos. 1, 13, 14), the Federal Republic of Germany is seeking to

5  prosecute fugitive KATIUSKA CRUZ ("CRUZ") for her role in a global

6  criminal organization, which through separate but related networks,

7  falsified subscriptions to online "services" that were not provided,

8  fraudulently charged debit and credit cards for those nonexistent

9  services through German payment service providers, and distributed

10  the wrongly charged money, amounting to approximately € 300 million,

11  to the participants in the global criminal organization.

12      On November 6, 2025, following her self-surrender, CRUZ

13  initially appeared before this Court, where she was temporarily

14  detained.  (See Docket Nos. 8, 10.)  At the hearing, the Court

15  continued the detention hearing until November 12, 2025.  (See Docket

16  No. 8.)  On November 12, 2025, CRUZ filed a brief opposing her

17  continued detention.  (See Docket Nos. 15.)  On that same day, after

18  hearing argument from the parties, the Court detained CRUZ pending

19  extradition.  (See Docket Nos. 15, 19.)

20      On December 3, 2025, following the substitution of her counsel

21  (Docket Nos. 21, 23), CRUZ filed the instant motion, in which she

22  advocated for bond, alleging that she is not a flight risk and that

23  "special circumstances" exist based on facts not previously known.

24  (Mot. For Bail Redetermination ("Bail Mot.") at 1.)  These facts

25  include her losing her employment if she is not released from

26  detention by December 13, 2025, that she would receive bail in

27  Germany, and that she is the sole caregiver for her mother.  (See

28  id.)  In addition, she asserts that her health conditions have

worsened during her detention, that the extradition proceedings will be protracted, and that there is a question whether the German prosecution is time-barred.  (See id. at 3-4, 9-10.)

As set forth in detail below, CRUZ's claims fail.  Consistent with the United States' previous filings, she fails to carry her heavy burden to prove that she is not a flight risk and that "special circumstances" merit release.  Accordingly, the United States respectfully requests that the Court deny CRUZ's bail application and continue to detain her pending the duration of her extradition proceedings.

## II.  ARGUMENT

### A.  CRUZ Continues to Fail to Establish "Special Circumstances" that Warrant Release on Bail

In her supplemental motion for bail, CRUZ lists several factors that she claims constitute "special circumstances."  But as set forth below, none of these factors, either individually or in the aggregate, satisfy the stringent standard for permitting her release on bail.

#### 1.  Hardships Are Not "Special Circumstances"

As she did in her initial opposition brief (Docket No. 15), CRUZ again asserts that she should be released on bail because she needs to care for her mother.  (See id. at 7.)  She also claims that she will lose her job if she does not return to work by December 13, 2025.  (See id.)

While the United States is sympathetic to the significant impact that CRUZ's continued detention has and will continue to have on her family, the fact remains that family members experience "hardship" in almost every case where one person is detained.  As one court noted,

1    [T]hat possibility [of unwelcome financial strain], however

2    unfortunate, is present in almost every case where a

3    defendant with family faces detention pending adjudication.

4    Accordingly, the fact that the defendant's family depends

5    on him for financial and emotional support is not a special

6    circumstance weighing in favor of release.

7  In re Extradition of Drumm, 150 F. Supp. 3d 92, 99 (D. Mass.

8  2015); see In re Extradition of Antonowicz, 244 F. Supp. 3d

9  1066, 1072 (C.D. Cal. 2017) ("The Court does not intend to

10 understate the financial and emotional burdens that detention

11 causes, but those burdens are present in almost all cases and

12 therefore do not constitute a 'special circumstance.'")

13 (internal quotation and citation omitted); In re Extradition of

14 Beresford-Redman, 753 F. Supp. 2d 1078, 1087 (C.D. Cal. 2010)

15 ("Emotional hardship for the family of a fugitive facing

16 extradition is present in almost all cases and therefore does

17 not constitute a 'special circumstance.'") (internal quotation

18 and citation omitted); In re Extradition of Mahabir, 858 F.

19 Supp. 504, 508 (D. Md. 1994) ("A defendant's incarceration

20 regularly creates difficulties for him and his family."); see

21 also In re Extradition of Smyth, 976 F.2d 1535, 1535-36 (9th

22 Cir. 1992) (special circumstances must be "extraordinary" and

23 not factors applicable to all fugitives facing extradition); In

24 re Extradition of Schumann, No. 18 CR 283, 2018 WL 4777562, at

25 *6 (N.D. Ill. Oct. 3, 2018) ("The inability to have any contact

26 or to provide support for family members are typical

27 circumstances whenever one is taken into custody and cannot be

28 considered 'special circumstances.'").  And indeed, courts have

3

1    denied bail in circumstances similar or arguably more severe

2    than those CRUZ describes. See In re Extradition of Budrys, No.

3    19 M 179, 2019 WL 1958566, at *6 (N.D. Ill. May 2, 2019)

4    (denying bail despite facts that fugitive was the primary

5    caretaker of his three young children while his wife pursued her

6    education, that his charges were non-violent and of a financial

7    nature, that there was some delay in the extradition

8    proceedings, and that fugitive claimed he had a strong

9    possibility of success on the merits).

10        The United States understands that CRUZ is the sole

11    caregiver for her mother, however, that is not sufficient for

12    this to be a "special circumstance."  CRUZ fails to adequately

13    explain whether any other family members, friends, or neighbors

14    can assist her mother, particularly with some of the tasks that

15    can be done remotely, including managing her mother's finances

16    and health insurance and scheduling transportation for her

17    mother to travel to her doctors' appointments.  To the extent

18    CRUZ's mother requires physical help in-person, CRUZ has not

19    explained why they have been unable to find alternative care for

20    her mother despite having made efforts to do so.  (See Bail Mot.

21    at 7).  Likewise, there is nothing in the record indicating that

22    friends or hired caregivers cannot assist with the care of his

23    parents and children.

24        The United States also is sympathetic to CRUZ losing her job,

25    but often, individuals who are detained lose their employment.  Thus,

26    CRUZ's situation is not significantly different than any other

27    fugitive facing detention or extradition.

28        Accordingly, any hardship CRUZ or her mother have suffered or

4

1  will suffer because of CRUZ's detention during this extradition

2  proceeding cannot justify her release.

3          2.    CRUZ's Health is Not a "Special Circumstance"

4          Courts are reluctant to determine that health conditions

5  constitute "special circumstances" when they can be treated by the

6  incarceration facility.  See In re Extradition of Gohir, No. 2:14-MJ-

7  00314-CWH, 2014 WL 2123402, at *12 (D. Nev. May 21, 2014) ("[The

8  fugitive] has referenced on multiple occasions that he is diabetic

9  and will not be able to receive adequate treatment if detained.

10  There is nothing indicating that the detention facility is unable to

11  meet [the fugitive's] medical needs.  Nor is there any indication

12  that his health has deteriorated or that he has been unable to

13  receive treatment during his detention."); see also United States v.

14  Nolan, No. 08-M-97, 2009 WL 4544699, at *3 (N.D. Ill. Dec. 1, 2009)

15  ("deterioration of [fugitive's] health" based on placement in

16  solitary confinement, while receiving treatment for skin cancer, is

17  not a special circumstance); In re Extradition of Huerta, No. H-08-

18  342M, 2008 WL 2557514, at *2 (S.D. Tex. June 23, 2008) (high blood

19  pressure, diabetes requiring daily medication and strict diet,

20  prostate problems, and anemia not "special circumstances"); In re

21  Extradition of Kyung Joon Kim, No. 04-cv-3886, 2004 WL 5782517, at *5

22  (C.D. Cal. July 1, 2004) (increasing back pain requiring daily anti-

23  inflammatory medication not "special circumstance"); In re

24  Extradition of Nacif-Borge, 829 F. Supp. 1210, 1216-17 (D. Nev. 1993)

25  (need for specialized diet and exercise are not "special

26  circumstance"); In re Extradition of Rouvier, 839 F. Supp. 537, 541-

27  42 (N.D. Ill. 1993) (heart condition requiring daily medication not

28  "special circumstance").  In fact, courts have refused to find

5

"special circumstances" in cases involving fugitives with similar and even with more serious health concerns than those alleged by CRUZ. Only health conditions much more severe than CRUZ alleges, which cannot be adequately managed by the detention facility, have been recognized as a "special circumstance." See, e.g., United States v. Taitz, 130 F.R.D. 442, 446 (S.D. Cal. 1990) (allergic reactions to certain materials commonly found in jail, which caused numerous rashes and stomach ailments, were, in combination with other factors, a "special circumstance"); In re Extradition of Hamilton-Byrne, 831 F. Supp. 287, 290-91 (S.D.N.Y. 1993) (noting that "[s]pecial circumstances might . . . be found if a health emergency could be established which could only be treated while a detainee was on bail," and rejecting health claim as a special circumstance because "[n]othing convinces me that the [fugitives'] health problems are unique or cannot be dealt with while in custody").

In this case, CRUZ alleges that she suffers from a herniated disc with sciatica, changes to her spine, and a lateral meniscus tear of the knee that cause pain, limit her mobility, and require monitoring. (See Bail. Mot. at 3-4.) She also alleges to suffer from asthma and allergies. (See id. at 4.) However, CRUZ presents nothing to suggest that the Bureau of Prisons cannot manage these ailments. Nor does she offer evidence to support her claim that her health will only continue to deteriorate should she remain incarcerated. (See id.) Without additional medical information, it appears that his health concerns do not present a "special circumstance."

### 3. The Availability of Bail in Germany Is Not a "Special Circumstance"

CRUZ, relying on information purportedly provided by a German criminal defense attorney, asserts that she should be released on bond here during the extradition proceedings because she might be entitled to bail in Germany. (See Bail Mot. at 4-7.) As a preliminary matter, it is not established that bail would, in fact, be available to CRUZ in Germany. That is a decision solely for the German courts.[1] Even if a guarantee of bail in the requesting country qualified as a "special circumstance," the possibility of bail does not. See In re Extradition of Sacirbegovic, 280 F. Supp. 2d 81, 86-87 (S.D.N.Y. 2003) ("Here, at best, [the fugitive] has shown that the [requesting country's] bail statute would not preclude his release on bail. . . . [T]here is no basis for [the fugitive's] suggestion that the mere possibility of bail in the requesting nation constitutes a special circumstance.").

Nevertheless, it is well settled that the requesting country's bail practices have no bearing on the United States' mandatory treaty and statutory obligations to deliver fugitives to that country. See In re Extradition of Martinelli Berrocal, 263 F. Supp. 3d 1280, 1298 (S.D. Fla. 2017); Antonowicz, 244 F. Supp. 3d at 1071; Drumm v. McDonald, Civ. A. No. 15-14221-RGS, 2016 WL 111411, at *4, *6 (D. Mass. Jan. 11, 2016); In re Extradition of Azizi, No. 5:14-cr-90282 PSG, 2014 WL 1995083, at *2-3 (N.D. Cal. May 13, 2014); Kim, 2004 WL 5782517, at *2; In re Extradition of Siegmund, 887 F. Supp. 1383,

---

[1] Accordingly, the United States will not address the statements set forth in Exhibit F, the report of the German criminal defense attorney retained by CRUZ.

7

1386-87 (D. Nev. 1995).  As one court noted, if the availability of bail in the foreign country were a "special circumstance" justifying bail in the United States, then,

> courts [would be forced] to make searching reviews of
> foreign laws to determine whether bail is appropriate for a
> given defendant in a given country for a given
> offense . . .  That would be an undesirable practice: it
> might well be unworkable, and, if applied widely, it could
> eviscerate, at least with respect to requesting countries
> whose domestic practice, like our own, strongly favors
> bail, the doctrine set by the Supreme Court that bail is
> the exception, not the rule, in international extradition
> cases.

Siegmund, 887 F. Supp. at 1386-87 (internal citations and quotes omitted).  This is because,

> [A]n extradition treaty between sovereign nations is
> essentially a contract, and the concern in an international
> extradition case is not to mirror the internal bail
> practices of the requesting country, but, rather, to
> deliver the extraditee to that country if the conditions
> precedent to extradition, as set out in the treaty, are
> satisfied.  To say that the extraditee would have been
> granted bail in the requesting country had he been arrested
> there, or that he will be granted bail once returned there,
> thus misses the point.

Id.

Accordingly, whether CRUZ could receive bail in Germany is neither relevant nor a "special circumstance."

4.  The Possibility of Protracted Extradition Proceedings
    is Not a "Special Circumstance"

CRUZ also claims that, due to the complexity the case, there will be "unusual delay" in the extradition proceeding that amounts to a "special circumstance."  (See Docket No. 11 at 7-8.)  But she identifies nothing so extraordinary as to overcome the presumption against release.

The Ninth Circuit has recognized that "'unusual delay in the appeal process' can be a 'special circumstance' that will justify bail . . . ."  See In re Extradition of Kirby, 106 F.3d 855, 863 (9th Cir. 1996) (quoting Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989)).  However, the delay must be something beyond what are simply "factors applicable to all defendants facing extradition."  In re Extradition of Maniero, 950 F. Supp. 290, 294 (S.D. Cal. 1996); see Smyth, 976 F.2d at 1535-36 ("The need to consult with counsel, gather evidence and confer with witnesses, although important, is not extraordinary; all incarcerated defendants need to do these things.").  Further, the delay caused by or attributed to the fugitive is not a "special circumstance."  See, e.g., United States v. Kin-Hong, 83 F.3d 523, 525 (1st Cir. 1996) (rejecting bail claim where "[t]o the extent that there has been some delay, [the petitioner] himself is partly responsible"); In re Extradition of Heilbronn, 773 F. Supp. 1576, 1581 (W.D. Mich. 1991) (court unsympathetic to petitioner who requested several delays); United States ex rel. McNamara v. Henkel, 46 F.2d 84 (S.D.N.Y. 1912) (delay justifies bail "only where the hearing date comes and the complainant is not ready to proceed").

Moreover, the "normal passage of time inherent in the litigation

9

process" does not constitute a special circumstance. Budrys, 2019 WL 1958566, at *3 (quoting Kin-Hong, 83 F.3d at 525). Rather, for a delay to constitute a "special circumstance," it must be "unusual or excessive." Antonowicz, 244 F. Supp. 3d at 1070. Courts have rejected the "potential for an extended delay" when it is "hypothetical" and when the delay "would largely arise from [the fugitive's] own strategic decisions." In re Extradition of Carr, No. 20 CR 370, 2020 WL 4816052, at *7 (N.D. Ill. Aug. 18, 2020).

Such are CRUZ's claims. Indeed, a mere general intent to investigate, contest extradition, and appeal is not unusual or sufficient to warrant bail. See, e.g., Smyth, 976 F.2d at 1535-36; Martinelli Berrocal, 263 F. Supp. 3d at 1298 ("[W]e do not find here that the length of the anticipated extradition process [of a former President of Panama], real or imagined, warrants a finding of special circumstances sufficient to grant bail contrary to the presumption of detention."); In re Extradition of Tehrani, No. SA 16-MJ-250-RAO, 2016 WL 3456971, at *2 (C.D. Cal. June 17, 2016) ("The Ninth Circuit has stated that issues common to all incarcerated defendants do not qualify as 'special circumstances.' Regarding anticipated delay, [the fugitive] has not shown circumstances that are different from 'factors applicable to all defendants facing extradition.'") (citations omitted).

Further, it is important to note that, if CRUZ intends to conduct any independent "investigation" in this case, any evidence that such an investigation would generate would be inadmissible at CRUZ's extradition hearing to the extent it contradicts the evidence offered by Germany. See, e.g., Rana v. Jenkins, 113 F.4th 1058, 1071 (9th Cir. 2024) ("An accused in an extradition hearing has no right

10

1    to pose questions of credibility as in an ordinary trial.  The only

2    evidence an accused can introduce is evidence that explains away or

3    completely obliterates probable cause.  Attacks on credibility, while

4    perhaps compelling to a jury, do not rise to the level of complete

5    obliteration required to find a lack of probable cause.") (cleaned

6    up; quotations and citations omitted); Barapind v. Enomoto, 400 F.3d

7    744, 749 (9th Cir. 2005) (en banc) ("[E]xtradition courts do not

8    weigh conflicting evidence in making their probable cause

9    determinations.") (internal quotation marks and citation omitted);

10   Azizi, 2015 WL 1299791, at *3 ("Evidence that does not accept the

11   requesting country's evidence as true [is] considered

12   'contradictory,' and not 'explanatory,' evidence.").

13        Accordingly, CRUZ fails to demonstrate a "special circumstance"

14   based on alleged delay.

15            5.   CRUZ Cannot Demonstrate a Substantial Likelihood of

16                 Success in the Extradition Proceedings[2]

17        As part of her claim about the possibility of protracted

18   litigation, CRUZ states that "there is a significant question

19   regarding whether the German prosecution is time-barred, given the

20   applicable five-year statute of limitations period."  (Bail Mot.

21   at 9 n.1.)  Although the Ninth Circuit has recognized that "the

22   raising of substantial claims upon which the [fugitive] has a high

23   probability of success" may constitute "special circumstances,"

24   Salerno, 878 F.2d at 317, CRUZ cannot demonstrate that she is

25

26        [2] CRUZ attaches a copy of the supplemental brief that co-
     defendant MEDHAT MOURID("MOURID") filed which raised these issues
27   (see Bail Mot. at 9-10 n.1; Exh. B).  The United States filed a
     Supplemental Reply in Support of its Request for Extradition.  (See
28   Docket No. 21.)  CRUZ's and MOURID's claims fail for essentially the
     same reasons.

substantially likely to succeed on her claim that Germany's prosecution is time-barred.  (See Bail Mot. at 9 n.1.)  CRUZ wrongfully asserts that her prosecution is precluded by German law.  (See id.)  According to her, Germany's charge is based in part on evidence developed during the 2020 prosecutions of Hamid "Ray" Akhavan ("R. Akhavan") and Ruben Weigand ("Weigand") in the Southern District of New York, and therefore, her alleged criminal conduct must have been reasonably known before 2020.  (See id.)  She concludes that there is a significant question regarding whether the German prosecution is time-barred, given the applicable five-year statute of limitations period."  (Id.)  Her claim is flawed and contrary to German law.

To the extent that CRUZ, like some of her co-defendants, suggests that she is substantially likely to succeed on her claim that Germany's prosecution is time-barred, that claim will fail and not constitute a "special circumstance."  See Salerno, 878 F.2d at 317.

It is well-settled law that a court should defer to a foreign government's interpretation of its own laws.  See, e.g., Grin v. Shine, 187 U.S. 181, 190 (1902); Basic v. Steck, 819 F.3d 897, 901 (6th Cir. 2016); Skaftouros v. United States, 667 F.3d 144, 160 n.20 (2d Cir. 2011); Sainez v. Venables, 588 F.3d 713, 717 (9th Cir. 2009); In re Assarsson, 635 F.2d 1237, 1244 (7th Cir. 1980).  Such deference is commensurate with the "comity considerations that lurk beneath the surface of all extradition cases," and with due respect for foreign nations' sovereignty.  Martinez v. United States, 828 F.3d 451, 463 (6th Cir. 2016) (en banc); see Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court, 482 U.S. 522, 546

1   (1987) ("[W]e have long recognized the demands of comity in suits

2   involving foreign states, either as parties or as sovereigns with a

3   coordinate interest in the litigation."); Sainez, 588 F.3d at 717;

4   Koskotas v. Roche, 931 F.2d 169, 174 (1st Cir. 1991); Ahmad v. Wigen,

5   910 F.2d 1063, 1067 (2d Cir. 1990).  It is further supported by the

6   prudential policy of avoiding the high risk that a U.S. court might

7   erroneously interpret the law of a foreign country.  See Emami v.

8   U.S. Dist. Court for N. Dist., 834 F.2d 1444, 1449 (9th Cir. 1987);

9   Assarsson, 635 F.2d at 1244.  Deference to a foreign country's

10  interpretation of its own laws is particularly appropriate in

11  extradition proceedings because fugitives will have ample opportunity

12  to contest issues of foreign law before the foreign courts if they

13  are extradited, and those foreign courts are best equipped to

14  adjudicate such matters.

15      Germany charged CRUZ with the offense of Formation of a Criminal

16  Organization Abroad, which is detailed in the Complaint for

17  Provisional Arrest with a View Toward Extradition (18 U.S.C. § 3184).

18  (See Docket No. 1 at ¶ 2.)  According to information German

19  authorities provided to the United States in connection with this

20  case, the German statute of limitations for this offense is five

21  years, and the period begins to run as soon as the last act is

22  completed.  (See Decl. of John J. Lulejian, dated 12/8/2025

23  ("Lulejian Decl.", at ¶¶ 2(a), (b).)  If, however, a court issues an

24  arrest warrant, the period of limitations is interrupted and begins

25  anew.  (See id. at ¶ 2(d).)

26      According to German authorities, the criminal organization

27  existed at least until the conclusion of the last known subscription

28  on June 17, 2021.  (See id. at ¶ 2(c).)  Consequently, the statute of

1   limitations would expire on June 16, 2026, a date that has not yet

2   passed. (<u>See id.</u>) Further, the Koblenz District Court issued a

3   warrant of arrest for CRUZ on May 13, 2025 (<u>see</u> Docket No. 1 at ¶ 3),

4   which interrupted the limitations period.

5       Accordingly, CRUZ's arguments appear to be based on a

6   misapplication of the German statute of limitations, and this Court

7   should defer to Germany's interpretation of its own laws.[3] CRUZ has

8   therefore failed to demonstrate that her challenge to Germany's

9   statute of limitation has a substantial chance of success.

10          6.   <u>CRUZ's Alleged Community Support, Lack of Criminal</u>

11               <u>History, Non-Violent Charge, and Lack of Flight Risk</u>

12               <u>Are Not "Special Circumstances"</u>

13      In her motion for bail, CRUZ asserts that she has established

14   "special circumstances" because she has no prior criminal history,

15   has been living openly, has longstanding ties, and community

16   support in the United States. (<u>See</u> Bail Mot. at 7-10.) Even

17   accepting CRUZ's claims as true, none of these facts, either taken

18   together or separately, justify releasing her from custody in these

19   extradition proceedings.

20      As a preliminary matter, the factors upon which CRUZ relies are

21   more appropriately considered when conducting the independent flight

22

23   _____

24        [3] To the extent CRUZ's pleading foreshadows her intent to invite
     the Court to evaluate German law in these extradition proceedings,
25   the United States would oppose such a request. <u>See, e.g.</u>, <u>Grin</u>, 187
     U.S. at 190 ("It can hardly be expected of us that we should become
26   conversant with the criminal laws of [the country seeking
     extradition].");  <u>Noeller v. Wojdylo</u>, 922 F.3d 797, 805 (7th Cir.
27   2019) ("[E]xtradition proceedings are not vehicles for United States
     federal courts to interpret and opine on foreign law."); <u>Skaftouros</u>,
28   667 F.2d at 156 ("Any arguments regarding the demanding country's
     compliance with its own laws . . . are properly reserved for the
     courts of that country.").

14

risk analysis. See Nacif-Borge, 829 F. Supp. at 1220 ("More often, the character and background of a person subject to extradition are considered in regard to risk of flight and danger to the community rather than as a special circumstance."); see also In re Extradition of Sidali, 868 F. Supp. 656 (D.N.J. 1994) (rejecting "extraordinary character" based on employment, family ties, no prior record, and community respect as special circumstance); In re Extradition of Valles, 36 F. Supp. 2d 1228, 1231 (S.D. Cal. 1998) (fugitive's past conduct and community ties used to assess flight risk).

However, even to the extent she raises issues that are relevant to the "special circumstances" analysis, courts, including this one, have already rejected similar character-based claims. See, e.g., Beresford-Redman, 753 F. Supp. 2d at 1089-90 (denying bail, despite strong family and community ties in United States, finding that letters in support from friends, family, and business associates are not "special circumstance" justifying bail); Azizi, 2014 WL 1995083, at *9 (denying bail despite individual having no criminal record, alleged offenses were non-violent, and strong ties to community); In re Extradition of Garcia, 615 F. Supp. 2d 162, 173 (S.D.N.Y. 2009) (rejecting claim of special circumstances in part because "[a fugitive] is not entitled to special consideration based on his status as a United States citizen"); In re Extradition of Harrison, No. 03 CR. MISC. 01, 2004 WL 1145831, at *9 (S.D.N.Y. May 21, 2004) (no special circumstance where fugitive had "substantial ties to the community," and "no apparent ties overseas").

In short, CRUZ fails to sufficiently establish a single factor that would warrant "special circumstances." Even considering the cumulative effect of the factors she raises, she falls short of

15

1    carrying her burden of establishing "special circumstances" for the

2    purposes of overcoming the strong presumption against bail in

3    extradition proceedings.

4       **B.    CRUZ Continues to Be a Flight Risk**

5       Neither CRUZ's supplemental filing nor the facts ascertained by

6    the Probation and Pretrial Services Office mitigate the risk that she

7    may flee.  Although CRUZ asserts that she will not flee because of

8    her desire to keep her job and care for her mother, she still faces

9    the prospect of serving a lengthy sentence, which may be up to ten

10   years if convicted of the offense sought for extradition, in a

11   foreign country's prison further increases CRUZ's risk of flight.

12   See, e.g., In re Extradition of Morrell, No. 3:24-MJ-05020-TLF, 2024

13   WL 756017, at *3 (W.D. Wash. Feb. 23, 2024); Martinelli Berrocal, 263

14   F. Supp. 3d at 1305; In re Extradition of Shaw, No. 14-MC-81475-WM,

15   2015 WL 521183, at *9 (S.D. Fla. Feb. 6, 2015).  As detailed in the

16   Pretrial Services Report, CRUZ is an experienced international

17   traveler, having traveled to Mexico, Canada, and Europe.  (Pretrial

18   Services Report at 2.)

19      The fact that she did not flee during the 2020 prosecutions of

20   R. Akhavan and Weigand is not persuasive.  CRUZ does not claim that

21   she received a target letter had contact with U.S. law enforcement

22   about that investigation or prosecution.  Because she had no reason

23   to believe that she was the subject of prosecution in the Southern

24   District of New York, she had no reason to flee.  In contrast, CRUZ

25   is how aware that she is the subject of prosecution in Germany and if

26   convicted, will serve time in a foreign prison away from her family.

27   Thus, while she may not have had an incentive to flee in 2020, she

28   certainly does now.

These facts, together with others in the record, demonstrate that no amount of bail would guarantee CRUZ's presence during her extradition proceeding.

**III. CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court deny CRUZ's request for bail and continue to detain her pending her extradition proceedings.  If, however, the Court decides to release CRUZ on bond, the United States respectfully requests the opportunity to advocate for the amount of the bond and conditions of release.


Dated: December 8, 2025          Respectfully submitted,

                                 TODD BLANCHE
                                 Deputy Attorney General

                                 BILAL A. ESSAYLI
                                 First Assistant U.S. Attorney

                                 IAN V. YANNIELLO
                                 Assistant United States Attorney
                                 Chief, National Security Division


                                 */s/ John J. Lulejian*
                                 JOHN J. LULEJIAN
                                 Assistant United States Attorney

                                 Attorney for Plaintiff
                                 UNITED STATES OF AMERICA

17

1

<u>**DECLARATION OF JOHN J. LULEJIAN**</u>

2

I, John J. Lulejian, declare as follows:

3

    1.   I am an Assistant United States Attorney and have been

4

assigned to represent the United States in <u>In the Matter of the</u>

5

<u>Extradition of Katiuksa Cruz, a Fugitive from the Government of the</u>

6

<u>Federal Republic of Germany</u>.  I make this declaration in support of

7

the United States' Opposition to Fugitive's Motion for Bail

8

Redetermination.

9

    2.   I am informed and believe that the prosecutor's office in

10

Koblenz, Germany, informed United States of the following:

11

      a.   The formation of a criminal organization abroad, one

12

of the offenses for which KATIUKSA CRUZ ("CRUZ") was charged in

13

Germany, is subject to a limitation period of five years in

14

accordance with Section 78 Paragraph 3 Number 4 of the German

15

Criminal Code.

16

      b.   According to Section 76a sentence 1 of the Criminal

17

Code, the limitation period begins as soon as the act is ended.

18

      c.   The criminal organization existed at least until the

19

conclusion of the last subscription, which was on June 17, 2021.

20

Accordingly, the limitation period would not expire until June 16,

21

2026.

22

      d.   In accordance with point 5 of the first sentence of

23

Paragraph 78c(1), that period may be interrupted by the issue of an

24

arrest warrant, and in the present case, the arrest warrant was

25

issued by the Koblenz District Court on May 13, 2025.

26

      e.   Under the first sentence of Paragraph 78c(3) of the

27

Criminal Code, the limitation period begins anew after each

28

interruption.

3.    I further am informed and believe that while Germany has charged CRUZ with similar conduct for which R. Akhavan and Weigand were prosecuted in the Southern District of New York, the two cases are not the same.  While the two cases involve iterations of the same general fraud scheme, the German case involves different criminal acts, victims, and charges than the New York case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 8th day of December, 2025, at Los Angeles, California.

/s/ John J. Lulejian
JOHN J. LULEJIAN

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for United States of America certifies that this brief contains 4,441 words, which complies with the word limit of L.R. 11-6.1.


Dated: December 8, 2025          */s/ John J. Lulejian*
                                 JOHN J. LULEJIAN
                                 Assistant United States Attorney